

**JAMES E. JOHNSON**
*Corporation Counsel*

THE CITY OF NEW YORK

LAW DEPARTMENT

100 CHURCH STREET
NEW YORK, NY 10007

**ERIK ZISSU**
Phone: (212) 356-7168
Fax: (212) 356-1148
ezissu@law.nyc.gov

November 2, 2020

*Via email & ECF*

Hon. Katherine Polk Failla
United States District Court Judge
Southern District of New York
40 Foley Square, Room 2103
Failla_NYSDChambers@nysd.uscourts.gov

Re: Webster v. The City of New York, Docket No. 19-cv-5638 (KPF);
City File No. 2019-043415

Dear Judge Failla:

The undersigned represents Defendant The City of New York in the above-referenced matter and writes pursuant to Rule 4(a) of the Court's Individual Rules seeking leave to submit a motion for summary judgment.

This case arises from an incident on February 5, 2019, when plaintiff Gregory Webster allegedly tripped and fell as he crossed Seventh Avenue at West 30th Street in Manhattan and suffered personal injuries. Photographs of the roadway and testimony from Webster and his colleague, Mitchell Ascione, point to an area surrounding a City-owned manhole located adjacent to a crosswalk spanning Seventh Avenue on the northern side of West 30th Street. Plaintiffs claim that the City was negligent in its ownership, control, and maintenance of the roadway. The City contests plaintiffs' claims and will argue in its motion for summary judgment that it is not liable for plaintiffs' injuries as a matter of law.

In New York, municipalities may not be liable for negligence in connection with a roadway defect in the absence of prior written notice or where an exception to the notice requirement applies. See Administrative Code of the City of New York, § 7-201(c)(2); Poirer v.

City of Schenectady, 85 N.Y.2d 310, 313 (1995).  Under the City's prior written notice statute, notice must specifically relate to the condition that allegedly resulted in harm.  See D'Onofrio v. City of New York, 11 N.Y.3d 581 (2008).  Upon receipt of proper notice, the City has 15 days in which to address the complained-of defective condition.  See Administrative Code of the City of New York, § 7-201(c)(2).

Where a defendant seeking a grant of summary judgment makes out a prima facie case that it did not have notice of an alleged roadway defect, the burden is on the plaintiff to establish that one of two exceptions applies.  See Yarborough v. City of New York, 10 N.Y.3d 726 (2008).  "The prior written notice requirement will be obviated only if the plaintiff establishes that the municipality affirmatively created the defect by performing work that immediately resulted in the existence of a dangerous condition or that a special use resulted in a special benefit to the locality."  Parente v. Metro. Transp. Auth., 2012 U.S. Dist. LEXIS 70145, *10 (S.D.N.Y. May 16, 2012).[1]  The timing around what is termed the "affirmative negligence exception" is unequivocal; only work "that *immediately* results in the existence of a dangerous condition" may trigger municipal liability.  Oboler v. City of New York, 8 N.Y.3d 888, 889-890 (2007) (emphasis added).  Defective conditions which "developed over time" are not covered by the exception.  Bielecki v City of New York, 14 A.D.3d 301, 301 (1st Dep't 2005).

Here, the facts establish that as of February 5, 2019, the City did not have prior written notice of the defective condition Webster alleges caused him to trip and fall.  On December 7, 2018, some two months before the incident, a woman named Kim Salvo lodged a complaint with the City's Department of Transportation ("DOT") at 6:40 p.m. by means of its 311 call system.  In an affidavit, Salvo attests that she complained about the condition of the roadway surrounding the manhole at issue and identified the location in photographs provided to her by plaintiffs.  In response to her complaint, DOT dispatched a road crew that same evening, which arrived at Seventh Avenue and West 30th Street at 10:50 p.m.  According to documents maintained by DOT, the road crew repaired the defective condition, as evidenced by the pothole crew supervisor marking the potholes found at the location "XCL," an abbreviation for "closed defect."  If the legal effect of Salvo's telephone call and the City's documentation of the reported defect were tantamount to prior written notice, the legal effect of the City's actions in remedying the defect satisfied its obligations under the notice statute.  In other words, by repairing the defect, notice was dissolved.

In response, it is expected that plaintiffs will attempt to point to a subsequent complaint, dated January 29, 2019, as providing notice of the defect that Webster alleges caused him to trip.  But there are three flaws in this anticipated argument.  First, the January complaint was not specific as to what roadway condition was being complained of.  As specificity is required, that complaint is unhelpful to plaintiffs.  See, e.g., Poirer, 85 N.Y.2d at 313.  Second, even if the January 29, 2019 complaint was about the specific condition that allegedly caused Webster to trip and otherwise fulfilled the requirements of the prior written notice law, it occurred within the 15-day grace period afforded by the prior written notice statute.  Under the law, the City had until February 13, 2019 – *after* the February 5, 2019 incident date – to address the problem.  See, e.g., Tortorici v. City of New York, 131 A.D.3d 959, 960 (2d Dep't 2015).  Third, documents produced by the City show that a road crew was dispatched two days after the

---

[1]   There are no allegations, nor evidence, of a special use here.

2

complaint, on January 31, 2019, and fixed the complained-of condition. As with the December 7, 2018 complaint, then, the City's actions eliminated notice – and liability – in advance of Webster's trip-and-fall on February 5, 2019.

In the absence of prior written notice, it is anticipated that plaintiffs will argue that the City caused or created the defect which resulted in plaintiffs' injuries. But this is also unavailing. As is clear under the law, any dangerous roadway condition caused by a municipality's negligence must be "immediately" evident. See Oboler, 8 N.Y.3d at 889-890. Defects arising weeks or months later are not sufficiently immediate as to trigger application of the exception. See Zinz v. Empire City Subway Co., Ltd., 2014 U.S. Dist. LEXIS 147247, *14 (S.D.N.Y. Oct. 14, 2014) (a period of two months deemed not sufficiently immediate); Spanos v. Town of Clarkstown, 81 A.D.3d 711, 712-713 (2d Dep't 2011) (affirmative negligence exception inapplicable where defect arose within two months of municipal repairs); Wald v. City of New York, 115 A.D.3d 939, 941 (2d Dep't 2014) (period of 10 weeks between roadway repair and incident date deemed not sufficiently immediate). As it is plaintiffs' burden to provide evidence that the allegedly dangerous condition was immediately apparent after the City repaired the area on December 7, 2018, their claims here fall short; there is no evidence that the DOT pothole crew caused or created a hazard upon finishing their work.

As the record is devoid of proof to support plaintiffs' claims, they will instead rely entirely on the opinion of Michael Kravitz, an engineer, who believes that the City's repairs of the area around the manhole failed to abide by DOT Highway Rules and were performed using cold asphalt owing to a malfunctioning "hotbox."[2] Kravitz's report, however, cannot overcome the City's proposed motion. Crucially, he points to no evidence that the roadway repairs of December 7, 2018, immediately caused or created a dangerous condition. Instead, Kravitz criticizes the method of the repairs undertaken on December 7, 2018, and opines that such practices caused later defects to arise. But to the extent the repair methods did not result in an immediately apparent defect, they are irrelevant. The Court's ruling in Zinz is particularly instructive here. See 2014 U.S. Dist. LEXIS 147247 at *3. In that case, the plaintiff submitted evidence, including testimony from City employees, that repairs to a roadway pothole "may have been made improperly." Id. Specifically, the Court found that the City "may not have performed a procedure called 'screening,' which ensures that the asphalt used to fill a pothole remains and does not disintegrate." Id. at *4. As a result, the plaintiff argued, "within a few weeks [of the repair], most, if not all, of the fill disintegrated, resulting in the hole in which [the plaintiff] fell." Id. at *14. But without evidence that the City's actions immediately resulted in the defective condition that the plaintiff tripped on, the affirmative negligence exception did not apply. Id. at *14-15. Even if the defendant's actions were negligent in Zinz, they at best created a latent defect that only revealed itself later, which does not satisfy the affirmative negligence exception. The same is true here.

Accordingly, the City respectfully seeks leave to file its motion for summary judgment.

---

[2] Kravitz's opinion regarding the use of cold asphalt to fill the subject pothole is purely speculative. Moreover, the City expects to submit an affidavit from the DOT road crew supervisor who filled out and signed the DOT paperwork on December 7, 2018, in which she will state that the hotbox malfunction would have cut short the crew's work for the night and that she would not have permitted potholes to be filled with cold asphalt.

Respectfully yours,

Erik Zissu

cc   Christopher S. Fraser, Esq. (via email & ECF)

4